IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:   CAPITAL FUNDING AND         Case No. 09-36086-KRH
         CONSULTING, LLC              Chapter 11

                Debtor.
_____

CAPITAL FUNDING AND CONSULTING, LLC,
DEBTOR-IN-POSSESSION,

                Plaintiff,

v.                                                          Adv. Proc. No. 10-03004

PATRICK BECKER and
SHERRIE BECKER,

                Defendants.
_____

## MEMORANDUM OPINION

Before the Court are the cross-motions for summary judgment (the "Cross-motions for Summary Judgment") filed by plaintiff, Capital Funding and Consulting, LLC (the "Debtor"), and defendants, Patrick and Sherrie Becker (the "Defendants") (together the "Parties"). The Cross-motions for Summary Judgment concern whether the Debtor can avoid the attachment of the Defendants' judgment lien against the Debtor's interest in various parcels of real property situated within the City of Richmond pursuant to 11 U.S.C. § 547(b). Hearing was held on June 29, 2010, at which counsel for Debtor and counsel for Defendants presented argument. At the conclusion of the hearing, the Court announced its ruling that the Debtor could avoid the attachment of the Defendants' judgment lien. Debtor's counsel was instructed to submit proposed findings of fact and conclusions of law consistent with the Court's ruling. Those

proposed findings and conclusions were not submitted to the Court for its consideration until Monday, October 11, 2010.  Having now considered the proposed submission, the Court has this day entered an order consistent with its prior ruling granting judgment in favor of the Plaintiff.  This Memorandum Opinion sets forth the Court's reasoning for its prior ruling and constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Procedural Background

On September 19, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  This adversary proceeding was commenced on January 11, 2010, to avoid certain transfers and to determine the validity, priority, or extent of liens and interests in property pursuant to 11 U.S.C. §§ 544, 547(b), and 550 and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure.  Defendants filed their answer on February 11, 2010.

On June 24, 2010, Debtor filed a Motion for Summary Judgment.  Pursuant to the Court's Pre-Trial Order entered February 19, 2010, all motions were required to be filed no later than 21 days prior to the trial date.  The trial date had been set for June 29, 2010.  Defendants initially filed a Memorandum in Opposition to the Debtor's Motion for Summary Judgment in which they objected to the Debtor's motion as untimely.  However, Debtor filed a set of joint stipulations as between Debtor and Defendants which obviated any need for a trial.  In lieu of trial, the Parties requested the Court to rule solely on the briefs, the stipulations, the evidence before the Court, and the oral arguments presented at the June 29, 2010 hearing in connection with the Cross-motions for Summary Judgment.

**Jurisdiction and Venue**

The Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (K). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

**Statement of Facts**

The pertinent facts in the case are undisputed.[1] Defendants were at all relevant times (and remain) creditors of the Debtor. The Defendants obtained a judgment against the Debtor on March 6, 2009, in the Circuit Court for the City of Richmond, Virginia, in the principal amount of $403,593.50 (the "State Court Judgment"). The Clerk of the Circuit Court for the City of Richmond, Virginia docketed the State Court Judgment on the Judgment Lien Docket on March 9, 2009. Docketing a judgment on the judgment lien docket of a given jurisdiction creates, as a matter of Virginia law, a judgment lien (the "Judgment Lien") that immediately attaches to all of the judgment debtor's attachable real property interests within the subject jurisdiction. Va. Code Ann. § 8.01–458 (2010); *see also* In re *Morrissey*, 37 B.R. 571, 572 (Bankr. E.D. Va. 1984); In re *Washington*, 6 B.R. 226, 227–28 (Bankr. E.D. Va. 1980). Accordingly, as of March 9, 2009, the Defendants had a judgment lien on any Real Property owned by the Debtor in the City of Richmond, Virginia (the "Judgment Lien").

At the time that the Defendants' Judgment Lien was obtained, the Debtor was the holder of fifteen promissory notes (the "Promissory Notes") each of which was secured by a deed of trust (the "Deeds of Trust") encumbering separate parcels of real property located throughout the

---

[1] The Stipulations of June 24, 2010 present all of the necessary facts for the case.

City of Richmond (the "Real Estate" or the "Real Property"). In its capacity as holder of the Promissory Notes, the Debtor was the beneficiary under the Deeds of Trust. Prior to obtaining the Judgment Lien, an event of default had occurred with respect to all fifteen of the Promissory Notes held by the Debtor. Accordingly, the Debtor instructed the trustees under the respective Deeds of Trust that secured the Promissory Notes to commence foreclosure proceedings.[2]

As a result of the ensuing foreclosure activities, the Debtor began to acquire fee simple title to the underlying parcels of Real Estate that were encumbered by the Deeds of Trust via trustees' deeds at public foreclosure sales (at which it was the successful bidder) and via deeds in lieu of foreclosure. The earliest date upon which the Debtor acquired fee simple title to any of the underlying parcels of Real Estate was June 25, 2009. Accordingly, the Debtor acquired its fee simple ownership interest in each of the parcels of Real Property that are in question in this case within the 90-day period immediately preceding the Petition Date.

The Parties have stipulated that each of the elements of an avoidable preference has been met in this case, save one. The Parties concur that the attachment of the Defendants' Judgment Lien resulted in the transfer of an interest of the Debtor in each of the parcels of Real Property that is at issue in this case. The Parties agree that these transfers (i) were made to or for the benefit of Defendants, (ii) were made for or on account of an antecedent debt owed by Debtor to Defendants before the transfers occurred, and (iii) were made while the Debtor was insolvent. The Parties acknowledge that the transfers enabled the Defendants to receive more than they

---

[2] Under Virginia Law, the trustee under a Deed of Trust, upon delivering the statutorily mandated notice to the owner of the property encumbered by the Deed of Trust, may offer the encumbered property for sale at public auction after fulfilling certain minimum advertising requirements. The noteholder, as the beneficiary under the Deed of Trust, is entitled to credit bid the outstanding amount due under the secured Promissory Note at the ensuing public auction. Va. Code Ann. § 55–59 (2010); *see, e.g.*, *Misty Mtn., L.C. v. United States Trustee (*In re *Misty Mtn., L.C.)*, 270 B.R. 53, 56 (W.D. Va. 2001). As a result, it is not unusual for the holder of the Promissory Note to become the successful bidder at the auction sale and ultimately the purchaser of the encumbered property. *See, e.g.*, *Rolen v. Southwest Va. Nat'l Bank (*In re *Rolen)*, 39 B.R. 260, 264 (Bankr. W.D. Va. 1983) (citing *Title Ins. Co. v. Indus. Bank*, 156 Va. 322 (1931)).

4

would have received in a case under Chapter 7 of the Bankruptcy Code, if the Judgment Lien had not attached and Defendants received payment of their debts to the extent provided by the provisions of the Bankruptcy Code. 11 U.S.C. § 547(b). The Parties disagree as to whether the transfers were effected on or within the 90-day period immediately preceding the Petition Date. 11 U.S.C § 547(b)(4)(A).[3]

## Standard of Review

The legal standard for entry of summary judgment is firmly established. Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (incorporated by Fed. R. Bankr. P. 7056). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where there are no "disputes over facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Both Parties claim that they are entitled to summary judgment based upon the joint submission of the stipulated facts. Accordingly, neither party will be deprived of a right to trial if summary judgment is entered against either one party or the other. Summary judgment "is favored as a mechanism to secure the 'just, speedy, and inexpensive determination' of a case" when the requirements of Rule 56 are met. *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1).

As the Parties assert that there is no dispute as to any material fact regarding the transfers, it is appropriate for the Court to grant summary judgment on the legal questions that remain

---

[3] The 90-day period immediately preceding the Petition Date is referred to as the "Preference Period." The "usual" 90-day Preference Period established by 11 U.S.C. § 547(b) may be extended to as far out as one year prior to the Petition Date, but only if the creditor at the time of the transfer was an insider, as defined in 11 U.S.C. § 101(31). Neither party in this case contends that the Defendants constitute "insiders" as defined by the Bankruptcy Code.

5

before it. The sole unresolved issue is: when did the Defendants' Judgment Lien attach to the parcels of Real Property? If the Judgment Lien attached to the parcels of Real Property at the time that the State Court Judgment was docketed, then the transfers occurred outside the 90-day Preference Period, and Defendants are entitled to prevail. If, on the other hand, the Judgment Lien attached to the parcels of Real Property at the time that the Debtor acquired its ownership interest in the Real Property, then the transfers occurred inside the 90-day Preference Period, and the Debtor is entitled to prevail. For the reasons stated below, the Court finds that the State Court Judgment Lien attached within the 90-day Preference Period when the Debtor acquired its interest in the parcels of Real Property.

## **Analysis**

Under 11 U.S.C. § 547(b), the trustee in a bankruptcy case may seek to avoid certain transfers as preferences.[4] Pursuant to 11 U.S.C. § 1107(a), the "debtor in possession [has] all the rights . . . and powers . . . of a trustee serving in a case under [chapter 11]." As the Debtor serves as debtor-in-possession in this chapter 11 bankruptcy case, the Debtor, like a trustee, is entitled to seek to avoid the attachment of Defendants' Judgment Lien as a preferential transfer under 11 U.S.C. § 547(b). *Herman Cantor Corp. v. Central Fidelity Bank (*In re *Herman Cantor Corp.)*,

---

[4] Under 11 U.S.C. § 547 a trustee may avoid any transfer of an interest of the debtor in property—
    (1)    to or for the benefit of a creditor;
    (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3)    made while the debtor was insolvent;
    (4)    made—
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5)    that enables such creditor to receive more than such creditor would receive if—
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b); *see also Prunty v. Terry (*In re *Paschall)*, 408 B.R. 79, 85 (E.D. Va. 2009).

15 B.R. 747, 749 (Bankr. E.D. Va. 1981) ("A debtor-in-possession enjoys the trustee's right to avoid a preferential transfer of the debtor's property.").

The Debtor (in its capacity as debtor-in-possession) has the burden of proving the avoidability of the transfers under § 547(b) of the Bankruptcy Code, while the Defendants (in their capacities as creditors and transferees) have the burden of proving the nonavoidability of the transfers under § 547(c) of the Bankruptcy Code. 11 U.S.C. § 547(g). The Debtor contends that the attachment of the Defendants' Judgment Lien caused a transfer of an interest of the Debtor in property that occurred when the Debtor took title to the parcels of Real Property. As the Debtor obtained title within the Preference Period, and as the parties have stipulated to all of the remaining elements of § 547 of the Bankruptcy Code, the Debtor argues that the transfers are avoidable preferences under 11 U.S.C. § 547.

Defendants argue first that their Judgment Lien attached to the beneficial interest that the Debtor held in the various parcels of Real Property under the Deeds of Trust at the time that their State Court Judgment was docketed on March 9, 2009. Defendants argue next that the attachment of their Judgment Lien relates back in time from the moment the Debtor did acquire the Real Estate to the date that their State Court Judgment was docketed pursuant to Virginia's lien enforcement law. Va. Code Ann. § 8.01–458 (2010).[5] Under either argument, the Judgment Lien attached, Defendants contend, when it was docketed, not when the Debtor subsequently acquired its ownership interest in the various parcels of Real Property via the trustees' deeds or the deeds in lieu of foreclosure. Thus, the Defendants argue that the transfers occurred outside of

---

[5] Va. Code Ann. § 8.01–458 provides in pertinent part: "Every judgment for money rendered in this Commonwealth by any state or federal court or by confession of judgment, as provided by law, shall be a lien on all the real estate of or to which the defendant in the judgment is or becomes entitled, from the time such judgment is recorded on the judgment lien docket of the clerk's office of the county or city where such land is situated."

7

the 90-day Preference Period and are not subject to avoidance by the Debtor. Both of Defendants' arguments are misplaced.

The term "transfer," as employed in the Bankruptcy Code, is an extremely broad concept. It is defined by the Bankruptcy Code to mean "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property." 11 U.S.C. § 101(54)(D). What constitutes a transfer and, importantly, when such a transfer occurs are questions of federal bankruptcy law, not state law. *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70 (1945); *see also Barnhill v. Johnson*, 503 U.S. 393, 397 (1992).

The Bankruptcy Code's broad definition of "transfer" refers to "an interest in property." Similarly, § 547 of the Bankruptcy Code allows a trustee to avoid any transfer of "an interest of the debtor in property." However, neither the phrase "an interest in property" nor the phrase "interest of the debtor in property" is defined by the Bankruptcy Code. *Matson v. Grease Monkey Int'l, Inc. (*In re *BEV of Va., Inc.)*, 237 B.R. 311, 314 (Bankr. E.D. Va. 1998). In the absence of a controlling federal statute, the nature of the Debtor's interest in the parcels of Real Property is governed by state law. *Id.* (citing *Am. Bankers Ins. Co. of Fla. v. Maness*, 101 F.3d 358, 363 (4th Cir. 1996) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)).

Controlling state law on the nature of the interest held by a beneficiary under a deed of trust can be found in the time-tested case of *Augusta National Bank v. Beard*.[6] In *Augusta National Bank*, the Supreme Court of Virginia held that "[a] deed of trust creditor or mortgagee has no estate in the land that a judgment would bind." *Augusta Nat'l Bank v. Beard*, 100 Va. 687, 694 (1902). "[A] creditor secured by a trust deed has [no] interest that amounts to a right of

---

[6] Although the Supreme Court of Virginia decided *Augusta National Bank* over a century ago, its fundamental holding continues to be cited with approval. *See, e.g.*, *Sun Yung Lee v. Zom Clarendon, L.P.*, 665 F. Supp. 2d 603, 617 (E.D. Va. 2009).

8

property in the land." *Id.* Rather, the "mortgage is a security, and is not part of the land upon which it rests." *Id.*

Virginia adheres to the lien theory of deeds of trust. *Interstate R.R. Co. v. Roberts*, 127 Va. 688, 692 (1920) ("The essence of a . . . deed of trust is that it creates a lien on property to secure a debt."). Giving a deed of trust on real property to secure a monetary obligation is a conveyance of an estate in property. *Am. Small Bus. Inv. Co. v. Frenzel*, 238 Va. 453, 457 (1989). It is a conveyance of the grantors' legal (as opposed to equitable) interest in the subject real property to a trustee who then holds bare legal title to the real property in trust as collateral security for the loan. *Id.* (citing *Larchmont Homes, Inc. v. Annandale Water Co.*, 201 Va. 178, 182 (1959)). "A deed of trust encumbering the property does not divest the [grantor] of his status as record title holder." *High Knob Assocs. v. Douglas*, 249 Va. 478, 484 (1995). The beneficiary under a deed of trust never obtains record title to any interest in the encumbered real property. "The grantor retains his ability to deal with the encumbered property as its owner." *Id.* (citing *Lowry v. Gills*, 143 Va. 79 (1925)). The grantor of the deed of trust retains the equitable estate in the real property.

Virginia property law is premised on the concept of record title. The guiding tenet of a record title system is the right of a purchaser to rely on record title absent notice of an unrecorded instrument. *Cunningham v. Richeson*, 138 Va. 369, 372 (1924). Thus, a trustee under a deed of trust can convey property to a third party purchaser at a foreclosure sale free and clear of subsequent encumbrances because that purchaser can duly rely on the record title of the trustee. Conferring some property interest on the beneficiary of a deed of trust would likely destroy the negotiability of the secured promissory note, and it would certainly destroy the

ability of any third party purchaser to rely upon the record title of the trustee at a foreclosure sale.[7]

Accordingly, the beneficiary under a deed of trust has no interest in the underlying real property that secures the promissory note. Rather, the beneficiary under a deed of trust holds an interest in the trust estate. The Debtor, as noteholder and as beneficiary under the Deeds of Trust, simply possessed rights with respect to the security, not with respect to the Real Property itself. *See Smith v. Credico Indus. Loan Co.*, 234 Va. 514, 520 (1987) (Whiting, J., dissenting).

Prior to the foreclosure process initiated on June 25, 2009, Debtor's only property interest resided in the Promissory Notes. The Uniform Commercial Code applies to negotiable instruments, like the Debtor's Promissory Notes, even when secured by real estate mortgages. In re *Valentine*, 146 B.R. 945, 948 (Bankr. E.D. Va. 1991) (citing *Capital Investors Co. v. Executors of the Estate of Morrison*, 484 F.2d 1157, 1160 (4th Cir. 1973), *cert. denied*, 440 U.S. 981 (1979)).[8] The Debtor had all of the rights of a noteholder under the U.C.C., including the right of enforcement. By virtue of its beneficial interest under the Deeds of Trust, the Debtor had the power to request the trustee to foreclose on the Real Property that served as collateral

---

[7] Defendants cite *In re Nova Real Estate*, 23 B.R. 62, 66 (Bankr. E.D. Va. 1982) (Bostetter, J.), in which it was said that "the beneficiary of the trust has an equitable interest in the trust property and is, in fact, its equitable owner." The Court would first note that there is no authority cited for the foregoing pronouncement of the court in *Nova Real Estate*. Second, the Court would observe that the statement is in clear contravention to the holding in *Augusta*. Finally any bankruptcy court now considering the issue within the Alexandria Division, where *Nova Real Estate* was decided, would be bound by the holding of the District Court in *Lee*, supra.

[8] The Debtor's interest in the Promissory Notes was in the nature of an interest in personal property as opposed to an interest in real property. On or about July 23, 2009, Defendants caused a writ of execution (the "Writ") to be issued by the Circuit Court for the City of Richmond, Virginia, in connection with the State Court Judgment. The Writ had a return date of October 21, 2009. The Defendants placed the Writ in the hands of a person authorized to serve process on or about July 24, 2009. Upon that date, a judgment lien arose in favor of Defendants against all of the Debtor's intangible personal property pursuant to Virginia law. The Parties subsequently entered into a Consent Judgment Order deeming the judgment liens against personal property void and unenforceable. Any such lien arose when the Writ was given to an individual authorized to serve process, and that event occurred within the Preference Period. Therefore, the Debtor as debtor-in-possession was permitted to avoid the attachment of the judgment lien against any personal property interest pursuant to 11 U.S.C. §§ 547(b) and 1107(a).

security for the repayment of the Promissory Notes when the makers defaulted on their obligations thereunder. Only upon purchasing the parcels of Real Property through the foreclosure process (either from the trustee at the foreclosure sale or from the owner in lieu of foreclosure) did the Debtor gain a property interest in the Real Estate itself. Accordingly, the Defendants' Judgment Lien did not attach to the Real Estate by virtue of the Debtor's beneficial interest under the Deeds of Trust at the time the State Court Judgment was docketed.[9]

Nor did the attachment of the Defendants' Judgment Lien relate back in time to the date the State Court Judgment was docketed once the Debtor did eventually acquire the Real Estate. Perfection is the key to determining the timing of a preferential transfer. *Prunty v. Terry (*In re *Paschall)*, 408 B.R. 79, 85–86 (E.D. Va. 2009). The Bankruptcy Code provides that a preferential transfer is made at the time it takes effect between the transferor and the transferee, provided it is perfected within 30 days thereafter. If it is not perfected within the requisite 30-day period, then the transfer is deemed to be made at the time of perfection. 11 U.S.C. § 547(e)(2). "The perfection of real property transfers stands on a footing different from the perfection of other transfers." 5 *Collier on Bankruptcy* ¶ 547.06, at 547–90 (16th ed. 2010).

> [A] transfer of real property . . . is perfected *when a bona fide purchaser of such property from the debtor* against whom applicable law permits such transfer to be perfected *cannot acquire an interest that is superior to the interest of the transferee*[.]

11 U.S.C. § 547(e)(1)(A) (emphasis added). The Judgment Lien was not perfected against the Real Property on the date the State Court Judgment was docketed.

Section 547(e) of the Bankruptcy Code timestamps the avoidable transfer, as a matter of federal law, at the moment that a bona fide purchaser of the Real Estate from the Debtor would

---

[9] The mechanics' lien cases cited by Defendants are inapposite as those cases deal with whether or not a deed of trust beneficiary has an interest in the mechanic's lien litigation as opposed to an interest in the property itself.

have been unable to acquire an interest in the Real Estate superior to that of the transferee. *See generally Grover v. Gulino (*In re *Gulino)*, 779 F.2d 546, 550 (9th Cir. 1985).[10] As the Debtor (as beneficiary under the Deeds of Trust) had no estate in the Real Property, the Debtor had no property interest that was capable of conveyance. *Augusta Nat'l Bank,* 100 Va. 687, 694 (1902). A bona fide purchaser from the Debtor could not hypothetically exist until the Debtor became seized with some interest in the property. Up until the moment the Debtor acquired its conveyable interest in the various parcels of Real Property, a transfer subject to avoidance under 11 U.S.C. § 547(b) simply could not have occurred. The negative test laid out in 11 U.S.C. § 547(e)(1)(A) could not be met until it became possible for a bona fide purchaser to obtain from the Debtor an interest in the Real Property that was inferior to the property interests held by the Defendants. That scenario was not satisfied until the Debtor acquired its interest in the Real Estate on or after June 25, 2009.

Although 11 U.S.C. § 547(e)(1)(A) is directly applicable as pertaining specifically to transfers of real property, it should be noted that this analysis applies equally and consistently to 11 U.S.C. § 547(e)(3). That section provides quite succinctly that for purposes of § 547 of the Bankruptcy Code, "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3). That moment occurred when the Debtor purchased the Real Property at the foreclosure auction or acquired the Real Property by deed in lieu of foreclosure. Thus, the transfer of the interest of the debtor in property under 11 U.S.C. § 547(b) occurred at the moment when the Debtor acquired its fee simple interest in the Real Estate.

---

[10] 11 U.S.C. § 547(e)(1)(A) requires the application of a hypothetical test—it must be determined what interests a bona fide purchaser could acquire from the Debtor that would be superior to those held by the transferee of the property. Acquiring a "superior" interest means gaining rights in the property that have a priority greater than those held by the transferee. Only when the hypothetical bona fide purchaser from the Debtor cannot acquire an interest superior to that held by the transferee has an avoidable transfer occurred.

Applying these principles, it is apparent that the preferential transfers sought to be avoided by the Debtor under 11 U.S.C. § 547 (specifically the attachment of the Defendants' Judgment Liens) occurred when the Debtor became the fee simple owner of the Real Estate. As a result, the transfers under review in this case occurred on and after June 25, 2009, the date stipulated by the Parties as the earliest at which the Debtor acquired a fee simple interest in one of the various parcels of Real Property.

## **Conclusion**

Based upon the stipulation of undisputed facts between the Parties, the Debtor has established all of the elements necessary to avoid the attachment of the Judgment Liens on the various parcels of Real Property as preferential transfers under 11 U.S.C. § 547(b). For purposes of § 547, all of the transfers occurred on and after June 25, 2009, which was the first date on which the Debtor acquired a fee simple interest in any of the subject properties and was the first date upon which the attachment of the Judgment Liens could have been perfected. The date upon which each of the transfers of the fifteen specific parcels of Real Property occurred was within the 90-day Preference Period immediately preceding the Petition Date. Therefore, the Debtor is entitled to summary judgment and the transfers will be avoided. A separate order avoiding the attachment of the Judgment Liens shall issue.

Entered: _____

                                                      /s/ Kevin R. Huennekens
                                    UNITED STATES BANKRUPTCY JUDGE